**The STATE of Ohio, Appellee,**

**v.**

**SPIRKO, Appellant.**

[Cite as *State v. Spirko* (1998), 127 Ohio App.3d 421.]

Court of Appeals of Ohio,
Third District, Van Wert County.

No. 15-97-12.

Decided April 29, 1998.

**422**

*Charles E. Kennedy*, Van Wert County Prosecuting Attorney, and *Joyce S. Anderson*, Franklin County Assistant Prosecuting Attorney, for appellee.

*John J. Callahan; Shaw, Pittman, Potts & Trowbridge, Thomas C. Hill* and *Alvin Dunn; Christopher G. Janney* and *Anne Marie Longobucco*, for appellant.

THOMAS F. BRYANT, Judge.

Appellant, John G. Spirko, appeals from the judgment of the Van Wert County Court of Common Pleas dismissing his second petition for postconviction relief filed on February 10, 1997.

On August 21, 1984, a jury found Spirko guilty of the kidnapping and aggravated murder of Betty Jane Mottinger, the postmaster in Elgin, Ohio. On August 27, 1984, Spirko was sentenced to death.

Spirko filed a direct appeal to this court. We affirmed his conviction and sentence. *State v. Spirko* (Mar. 6, 1989), Van Wert App. No. 15–84–22, unreported, 1989 WL 17734. The judgment of this court was affirmed by the Ohio Supreme Court in *State v. Spirko* (1991), 59 Ohio St.3d 1, 570 N.E.2d 229. Spirko then filed a petition for a writ of certiorari in the United States Supreme Court, which was denied. *Spirko v. Ohio* (1991), 502 U.S. 913, 112 S.Ct. 312, 116 L.Ed.2d 254.

Spirko filed his first petition for postconviction relief on June 29, 1992. His petition was denied by the Van Wert County Common Pleas Court on February 26, 1993. We affirmed this judgment on April 29, 1993. Thereafter, pursuant to a request made under the federal Freedom of Information Act ("FOIA"), Section 552, Title 5, U.S.Code, Spirko obtained access to United States Postal Service Inspector ("USPSI") records relating to the federal government's investigation into the abduction and murder of Betty Jane Mottinger. Spirko cites mainly these postal investigation records in support of his second petition for postconviction relief. Spirko also supplemented his petition with some independent investigation material.

After a detailed review of the record, the trial court dismissed Spirko's petition on October 6, 1997. The trial court concluded, among other things:

"[P]etitioner has failed to show that he was unavoidably detained from obtaining *appropriate* facts to support his petition, and that he has failed to show by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the petitioner guilty or eligible for the death sentence. Therefore, the court has no duty to entertain these subsequent petitions." (Emphasis *sic.*)

Spirko now takes this appeal.

I. Spirko's first assignment of error states:

"The trial court erred by dismissing Mr. Spirko's first successor postconviction petition and in concluding that the substantial new evidence discovered by Mr. Spirko in the prosecution's files does not entitle him to relief under *Brady v. Maryland,* 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215] (1963)."

A trial court's ability to review successive postconviction petitions filed pursuant to R.C. 2953.21 is limited. As stated in recently amended R.C. 2953.23:

"(A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, *a court may not entertain * * * a second petition*

*or successive petitions for similar relief on behalf of a petitioner unless both of the following apply:*

"(1) Either of the following applies:

"(a) The petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief.

"(b) Subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

"(2) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence." (Emphasis added.)

Accordingly, in addressing whether the trial court erred in dismissing Spirko's petition, we must first determine whether Spirko has set forth sufficient grounds to permit the courts to entertain his successor petition.

First, Spirko must show he "was unavoidably prevented from discovery of the facts upon which [he] must rely to present the claim for relief." R.C. 2953.23(A)(1)(a).[1] It is undisputed that Spirko was unavoidably prevented from discovery of some items. Investigatory files compiled by USPSI officials were withheld from Spirko as nonexculpatory prosecutorial work product pursuant to Crim.R. 16(B)(1)(g).

Spirko's inability to obtain some material within the prosecution's file alone, however, will not satisfy the first criterion. Spirko must also show that the facts withheld are those upon which he "must rely to present the claim for relief." R.C. 2953.23(A)(1)(a). By definition, facts upon which one "must rely" are material facts. Such material facts can only be those which, if believed, could arguably meet the second criterion for determining whether a successor petition for postconviction relief may be entertained. R.C. 2953.23(A)(2).

To meet the second criterion, Spirko must show "by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would

---

1. Spirko does not contend that a newly recognized constitutional right gives him standing to raise his successor petition. Accordingly, R.C. 2953.23(A)(1)(b) is not applicable to our review.

have found [him] guilty." R.C. 2953.23(A)(2). The constitutional error alleged by Spirko is a violation of his right to due process and a fair trial based on the prosecution's alleged failure to disclosure exculpatory evidence as required by *Brady v. Maryland* and its progeny. *Brady* held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland* (1963), 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–1197, 10 L.Ed.2d 215, 218.

Brady was a postconviction petitioner who discovered, after he had been "tried, convicted, and sentenced, and after his conviction had been affirmed," that the state of Maryland had withheld from his defense a statement made by a coconspirator, indicating that the coconspirator had actually strangled the victim, albeit at Brady's insistence. *Id.* at 84–85, 83 S.Ct. at 1195–1196, 10 L.Ed.2d at 217. This withheld evidence was determined to be material, at least to Brady's punishment. *Id.*

Here Spirko claims that the prosecution withheld evidence material to his guilt. Spirko cites USPSI investigation files that he claims were not disclosed to him by the state. Spirko obtained the USPSI records by means of a federal FOIA request. An agreement between Spirko and the federal government appears to have allowed Spirko access to these records.

While the use of the FOIA as a discovery tool in postconviction petitions is not unprecedented,[2] we are mindful of the reasoning in *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 639 N.E.2d 83, which expressed disfavor as to postconviction petitioners using the Ohio Public Records Act, R.C. 149.43, to obtain discovery of criminal investigations in support of such petitions. The Ohio Supreme Court held that "[a] defendant in a criminal case who has exhausted the direct appeals of her or his conviction may not avail herself or himself of R.C. 149.43 to support a petition for postconviction relief." *Id.* at paragraph six of the syllabus. The court noted that its restriction on postconviction discovery might appear "harsh but it is not without good reason":

"Since the possibility of retrial remains, the defendant, who has obtained records during postconviction proceedings, would have on retrial more information than she or he would be entitled to possess if limited to discovery pursuant to Crim.R. 16. This, of course, could present (at best) an anomalous result." *Id.* at 432, 639 N.E.2d at 92–93; see, also, *State v. Walker* (1995), 102 Ohio App.3d 625,

---

2. *State v. Apanovitch* (1996), 113 Ohio App.3d 591, 681 N.E.2d 961(which considered evidence previously withheld from a postconviction petitioner obtained through the federal FOIA). See, also, *United States v. Bagley* (1985), 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481(where the Supreme Court considered whether evidence obtained by a habeas corpus petitioner through the FOIA was exculpatory and improperly withheld by the state).

657 N.E.2d 798 (where the Second District Court of Appeals noted that the *Steckman* rule would preclude postconviction petitioners from both obtaining and even *using* materials nonetheless obtained through the Public Records Act in support their petitions). Nevertheless, because the government has apparently agreed to give Spirko access to these records, we feel inclined to consider their effect in support of his petition.

Spirko points mainly to photographs and interview notes, which, if believed, indicate that Spirko's alleged accomplice, Delaney Gibson, was in North Carolina and wore a beard on the day before Betty Jane Mottinger was abducted in Elgin, Ohio. Spirko maintains that because the prosecution's theory of its case put Spirko and Gibson together in Elgin, Ohio on August 9, 1982, the day Mottinger was abducted, this evidence was exculpatory to Spirko and should have been disclosed to him.

First, the record indicates that the evidence concerning Gibson's possible alibi was disclosed to Spirko. While all the photos of Gibson may not have been turned over, Spirko and his defense were on notice as to possible alibi witnesses relating to Gibson. Spirko, however, chose not to pursue this line of evidence in his defense.

For instance, on July 24, 1984, a stipulation as to discovery provided to the defense was entered by the prosecutor and attorneys for Spirko. The list contained the following items provided by the state: "Laney Gibson's picture; Memorandum of Interview of Delaney Gibson 4/21/83, 4/22/83 and 4/29/83; Interview Concerning Delaney Gibson a) Roger Buress b) Margie Gibson; and Juan Flores's [3] statements and records concerning Delaney Gibson." (Footnote added.) Further, the discovery stipulation identified a March 13, 1984 disclosure to Spirko that read as follows:

"12. Information concerning Delaney Gibson: Mr. Michael Bentley, Box 425, Ary Kentucky, 41712, has stated that Delaney Gibson was with him and his wife in North Carolina on 8/7/82 and 8/8/82 and that pictures are purported to have been taken of the weekend in question."

Clearly, Spirko was notified of Gibson's possible alibi defense. Therefore, no *Brady* violation can occur when evidence is disclosed, but merely not pursued.

■ Furthermore, even if the prosecution failed to disclose photographs of a bearded Gibson in North Carolina the day prior to Mottinger's abduction, that evidence was not material to Spirko's guilt. Evidence withheld by the prosecu-

---

3. Juan Flores recalled that Gibson picked tomatoes in North Carolina during August 1982, but could not state for certain that he was working during the week of August 9, 1982, the time of Mottinger's abduction.

tion is material to guilt only if the evidence could "reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley* (1995), 514 U.S. 419, 435, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490, 506; see, also, *United States v. Bagley* (1985), 473 U.S. 667, 683, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481, 494. After viewing this newly disclosed evidence in a light most favorable to Spirko, our confidence in the verdict remains firm.

Spirko also argues that the prosecution withheld evidence concerning the possible involvement of other suspects John Willier, Greg Seek, and Leonard Burlile. Spirko contends that undisclosed evidence, consisting of USPSI interview notes, raised suspicions as to whether these men were involved in the abduction and murder of Betty Jane Mottinger. Spirko, notably, does not argue that these interview notes, in any way, preclude his confessed involvement in these crimes.

The information cited by Spirko in the USPSI records concerning these three Findlay, Ohio suspects was not material to Spirko's guilt or punishment. First, no interview negates Spirko's involvement in the crimes. Further, the information at best supplements the defense theory, as argued to the jury, that others may have been involved in the abduction and murder of Mottinger. That information was not enough then to create a reasonable doubt in the jury's mind as to Spirko's guilt, and this supplemental information is not enough now to cause this court to lose confidence in the jury's findings. *Kyles, supra.*

Finally, the prosecutor turned over his entire investigatory file, including records from the USPSI investigation, to an independent counsel (John Sabol), for review of any exculpatory material. Sabol advised the trial court that he found no exculpatory information in the files in a letter dated July 9, 1984.[4] Sabol determined that after Mottinger's body was located in Findlay, Ohio, several persons were interviewed in that area with only "John Willer [*sic*]" becoming a suspect, but that he was subsequently cleared. Sabol reviewed the information concerning "several Findlay area residents" and found nothing exculpatory to Spirko.

■ On direct appeal, Spirko argued that he had been denied exculpatory evidence. Spirko's thirty-first assignment of error to this court stated, "The State's failure to provide the defense with exculpatory or favorable evidence violated appellant's rights to due process, fair trial and effective assistance of counsel." *Spirko* (Mar. 6, 1989), Van Wert App. No. 15–84–22, unreported, at 70–

---

4. Spirko argues that Sabol submitted a follow-up letter to the trial court that indicated that some investigatory files were discoverable by Spirko. The state responds that Spirko misrepresents the import of this alleged second letter, which was not made part of the record. The alleged second letter is not part of this record; accordingly we cannot consider it.

72. We found that the alleged withheld evidence was not exculpatory. Furthermore, Spirko raised a similar argument in his thirty-third proposition before the Ohio Supreme Court. In overruling that proposition, the Supreme Court noted, "Furthermore * * *, the entire investigative file was reviewed by independent counsel, who concluded that the state had not failed to release any exculpatory evidence to defendant. Accordingly, we find this proposition of law to be not well-taken." *Spirko*, 59 Ohio St.3d at 26, 570 N.E.2d at 257. Accordingly, *res judicata* bars any attack on the procedure of discovery implemented by the trial court. *State v. Szefcyk* (1996), 77 Ohio St.3d 93, 671 N.E.2d 233; *State v. Perry* (1967), 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104.

After reviewing the records presented in a light most favorable to Spirko, we find the information contained therein not material to Spirko's defense and insufficient to cause any loss of confidence in the jury's findings. *Kyles, supra.* Accordingly, we find no arguable basis upon which these records could demonstrate, clearly and convincingly, that but for constitutional error at trial, Spirko would not have been found guilty by a reasonable finder of fact. R.C. 2953.23(A)(2).

Spirko also supplemented his petition for postconviction relief with entirely new evidence obtained through independent investigation. This material, if believed, again merely indicates that a bearded Delaney Gibson was with family and friends in North Carolina during the weekend of August 7–8, 1982. Nevertheless, because Spirko's claimed constitutional error accuses the state of improperly withholding exculpatory evidence, new material by definition could not have been withheld by the state. As conceded by a Spirko investigator, Spirko was able to produce the newly discovered photographs supplementing his petition, as Margie Gibson, the wife of Delaney Gibson, "held [them] back from the postal service investigators."

Further, to the extent that these photographs and recent statements are indicative of the investigative material possessed by the state at the time of trial, as noted above, Spirko was given notice of this material, but chose not to pursue it.

All the material submitted by Spirko, even if believed, could not demonstrate constitutional error, let alone constitutional error sufficient enough to undermine the factfinder's determination of guilt and sentence. R.C. 2953.23(A). As the evidence submitted by Spirko is immaterial to demonstrating the constitutional error of which he complains, he has not presented facts upon which he can "rely to present [his] claim for relief." R.C. 2953.23(A)(1)(a). Spirko's first assignment of error is overruled.

II. Spirko's second assignment of error states:

"The trial court erred in refusing to grant Mr. Spirko discovery with respect to the issues raised in his first successor post-conviction petition and by refusing to grant Mr. Spirko an evidentiary hearing with respect to those issues."

Spirko's argument for discovery is not well taken. Postconviction petitions are special civil actions governed exclusively by statute. R.C. 2953.21 and 2953.23. There are no provisions in the statute for a postconviction petitioner to obtain discovery. *State v. Smith* (1986), 30 Ohio App.3d 138, 140, 30 OBR 256, 258–259, 506 N.E.2d 1205, 1207–1208. Accordingly, the trial court did not err when refusing discovery upon Spirko's filing a successor postconviction petition.

Spirko's argument that the trial court erred when denying him an evidentiary hearing is also not well taken. As noted above, Spirko failed to meet the criteria under R.C. 2953.23(A) to have his successor postconviction petition entertained by the trial court. Accordingly, the trial court lacked jurisdiction to hold an evidentiary hearing on his petition.

For these reasons, Spirko's second assignment of error is overruled.

*Judgment affirmed.*

SHAW and HADLEY, JJ., concur.